

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 06, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PATRICK R.,[1]

          Plaintiff,

   v.

FRANK BISIGNANO,
Commissioner of Social Security,

          Defendant.

No.  1:26-cv-3017-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Patrick R. claims he is unable to work due to severe mental impairments and asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

primarily contends that the ALJ erred in finding that he was not disabled in the absence of substance use, asserting that his co-occurring mental disorders are disabling even when he does not use drugs. As is explained below, substantial evidence does not support the ALJ's finding that Plaintiff's substance use was material to the disability determination. This matter is remanded for further proceedings.

## I.    Background

Plaintiff filed his Title 2 and 16 applications for benefits in May 2023, alleging disability beginning July 1, 2018.[2]

Plaintiff appeared for a hearing before ALJ Matthew Dawson in August 2025, at which Plaintiff testified to the following.[3] He worked as a mechanic until 2018 when he was hospitalized for his mental health.[4] He worked as a mechanic again for approximately six months

---

[2] Administrative Record (AR) 355–80.

[3] *See* AR 45–69.

[4] AR 52–53.

DISPOSITIVE ORDER - 2

in 2019.[5] He was incarcerated from 2019 to 2023.[6] He had been homeless since his release from prison in 2023.[7] At the time of the hearing, he was living in a behavioral health center and had been staying there for a month because of mental health issues.[8] He suffered from drug addiction and had only a few periods of sobriety outside of prison or treatment centers.[9] He suffered from bipolar disorder and, even when he was sober, experienced periods of mania followed by crashes and depressive states.[10]

The ALJ issued a decision finding Plaintiff not disabled.[11] The ALJ found that including Plaintiff's substance use, the severity of his

---

[5] AR 51–52.

[6] AR 55–56.

[7] AR 55.

[8] AR 54.

[9] AR 56–57.

[10] AR 57–58.

[11] AR 17–37. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. If there is

DISPOSITIVE ORDER - 3

mental impairments met listing 12.03 for schizophrenia spectrum and other psychotic disorders, but if he stopped the substance use, he could perform substantial gainful activity.[12] The substance use disorder, therefore, was a contributing factor material to the determination of disability.[13]

The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[14] As to the medical opinions, the ALJ found:

- the prior administrative medical findings of Richard B., PhD, partially persuasive.

---

medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[12] AR 22, 35.

[13] AR 36.

[14] AR 30.

DISPOSITIVE ORDER - 4

- the prior administrative medical findings of John G., PhD, unpersuasive.

- the prior administrative medical findings of Stephen Gerrish, MD, and Ian C., MD, overall persuasive.

- the examining opinions of Justin Stamschror, MD, and Linda Wolcott, PhD, persuasive only to the extent they endorsed disabling mental limitations when using substances.

- the treating opinions of Dennen Frazier, PA, and Beverly Khodra, MD, unpersuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2020.

- Step one: Plaintiff had not engaged in substantial gainful activity since July 1, 2018, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: schizoaffective disorder, bipolar type; PTSD; panic disorder; anti-social personality disorder;

---

[15] AR 32–34.

DISPOSITIVE ORDER - 5

substance use disorders (cannabis, stimulants); and

degenerative disc disease.

- Step three: including Plaintiff's substance use, the severity of his impairments met listing 12.03, but if he stopped the substance use, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: if Plaintiff stopped the substance use, he had the RFC to:

    perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can tolerate frequent exposure to extreme cold but no exposure to moving mechanical parts and high exposed places. He can understand, remember, and carry out simple instructions. He can tolerate occasional changes in a routine work setting. He can make simple work-related decisions and can tolerate occasional interactions with supervisors, coworkers, and the general public.

- Step four: Plaintiff did not have past relevant work.

- Step five: if Plaintiff stopped the substance use, considering his RFC, age, education, and work history, Plaintiff could perform

DISPOSITIVE ORDER - 6

work that existed in significant numbers in the national economy, such as router, marker, and collator/operator.[16]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[17] Plaintiff now appeals to district court.[18]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[19] and such error impacted the nondisability determination.[20] Substantial evidence is

---

[16] AR 17, 20–36. *See* AR 62–63 (Vocational expert testified that a hypothetical individual with the ALJ's crafted RFC except for more manipulative restrictions could perform those three jobs.).

[17] AR 1–3.

[18] ECF No. 1.

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[20] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may

DISPOSITIVE ORDER - 7

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

### III.   Analysis

Plaintiff argues the ALJ erred by finding that substance use was material to the disability determination, improperly rejecting his symptom testimony, and improperly evaluating the medical opinions.

---

not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 8

The Commissioner argues the ALJ committed no consequential error and substantial evidence supports his decision.

## A.    Substance Use: Plaintiff establishes consequential error.

Plaintiff contends the ALJ erroneously relied on selective, non-representative evidence in finding that he was not disabled absent substance use. Plaintiff contends the ALJ ignored contradictory evidence that even when he was not using drugs, he experienced depression and bipolar symptoms that interfered with his ability to work. The Court agrees.

### 1.    Standard

If the ALJ finds that a claimant is disabled and there is medical evidence of drug or alcohol addiction, then the ALJ must determine whether drug or alcohol use is a material factor contributing to the disability.[22] If the remaining limitations without drug or alcohol use would not be disabling, disability benefits are not awarded.[23] The

---

[22] 20 C.F.R. §§ 404.1535(a), 416.935(a).

[23] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535, 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

DISPOSITIVE ORDER - 9

claimant has the burden of showing that his drug or alcohol use is not a material contributing factor to disability.[24]

The Social Security Administration has provided the following interpretation of its policies regarding claimants with co-occurring mental disorders and drug addiction and alcoholism ("DAA"):

> a. Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.
>
> b. To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.
>
> c. We may purchase a [consultative exam] in a case involving a co-occurring mental disorder(s). We will purchase [consultative exams] primarily to help establish whether a claimant who has no treating source records has a mental disorder(s) in addition to DAA. . . .
>
> d. We will find that DAA is not material to the determination of disability and allow the claim if the record

---

[24] *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.[25]

### 2.    ALJ's Findings

The ALJ found that "the longitudinal record documents that, including his substance use, [Plaintiff] is markedly limited" in his abilities to interact with others and adapt or manage oneself, "which is evidenced by abnormal thoughts and behaviors, irritability, anger, auditory and visual hallucinations, delusions, and paranoia."[26] But,

> in the absence of substance use, his symptoms are sufficiently controlled with medicinal and non-medicinal means such that he is capable of performing sustained mental work activity in an ordinary work setting on a regular and continuing basis (8 hours a day for 5 days a week or an equivalent work schedule) within the confines of the assessed residual functional capacity.[27]

---

[25] Social Security Ruling, SSR 13-2p; Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 78 FR 11939-01, 11943–44.

[26] AR 23.

[27] AR 32.

DISPOSITIVE ORDER - 11

The ALJ first considered evidence of Plaintiff's functioning while using substances.[28] As the ALJ noted, in July 2018, Plaintiff presented to the emergency department in a violent state, "extremely intoxicated on something," and had to be fully restrained.[29] The doctor suspected methamphetamine use and Plaintiff noted a long history of drug and alcohol abuse.[30] Plaintiff's drug screen was negative for methamphetamines but positive for THC and tricyclics.[31] He was then incarcerated from September 2019 to April 2023, during which he was treated for opioid dependence, schizoaffective disorder, bipolar disorder, and depression.[32]

The ALJ next considered that following his release from prison in 2023, Plaintiff presented to the emergency department after reportedly taking several drugs, complained of chronic pain, asked for opiates, and

---

[28] AR 23–28.

[29] AR 801–11.

[30] AR 811.

[31] AR 811.

[32] *See* AR 598–702.

DISPOSITIVE ORDER - 12

was uncooperative.[33] Five days later, he was minimally responsive, his drug screen was positive for multiple substances, and he reported taking opiates.[34] Throughout the year, he visited different emergency departments and medical clinics, filled prescriptions at different pharmacies, and complained of pain from suspicious injuries, which the ALJ considered drug-seeking behavior.[35] Plaintiff often presented in an altered mental state, reported substance use, and had positive drug screens.[36]

The ALJ next considered that Plaintiff began mental health counseling in November 2023, reporting to his counselor that he used methamphetamine and fentanyl at least weekly while navigating homelessness.[37] He requested certain prescription painkillers and

---

[33] AR 23, 1115–19.

[34] AR 1091.

[35] AR 24, 1305, 1307–08, 1311, 1313, 1325–28, 1426, 1541, 1543.

[36] *See* AR 1325–28.

[37] AR 24, 1396–97, 1730.

DISPOSITIVE ORDER - 13

stimulants.[38] Following another incarceration in 2024, Plaintiff complained of hallucinations and recent heavy methamphetamine and fentanyl use, and he tested positive for fentanyl.[39] He exhibited withdrawal symptoms during a December 2024 to January 2025 incarceration, but was deemed appropriate for outpatient care with sobriety.[40] In May 2025, he was involuntarily placed in inpatient mental health treatment when he reported hallucinations, substance use, and suicidal ideations, and at the time he tested positive for amphetamines and fentanyl.[41]

As to evidence from when Plaintiff was not using drugs, the ALJ considered that Plaintiff visited a therapist in July 2018 who noted that Plaintiff was engaged, denied suicidal ideation, and was only slightly anxious.[42] On follow-up the next month, he was taking

---

[38] AR 1396–97, 1399, 1568–70, 1759, 1875.

[39] AR 1734, 1738, 1746, 1763.

[40] AR 1675, 1680–82.

[41] AR 1877, 2320–21, 2650–52.

[42] AR 31, 502.

DISPOSITIVE ORDER - 14

medication that helped with trauma and flashbacks, and he presented "much more calm" with "thought content . . . much less tangential than at intake."[43] The ALJ continued:

> Through mid-2019, treatment notes show that he reported doing well. A community support worker described him as appropriate in his interactions with her as well as pleasant and reality based. He was continuing to take his medications and was making all his scheduled appointments. In December 2018, he reported that his sleep was good despite having a newborn baby at home, and he denied any mood swings. He expressed satisfaction with his medication and requested that it be refilled . . . .[44]

The ALJ found that the prior administrative medical findings at the initial level that Plaintiff had a marked limitation in interacting with others was "only consistent with the record medical evidence of substance use," reasoning that "[n]owhere is this more apparent than in treatment notes showing an outpatient level of care was adequate without substance use, while inpatient care was required with

---

[43] AR 497.

[44] AR 32 (citing AR 552, 561–66, 569–78, 589 (treatment records from prosecutorial diversion program)).

DISPOSITIVE ORDER - 15

substance use."[45] Similarly, the ALJ discounted the prior administrative medical findings of marked mental limitations at the reconsideration level because they were present only with substance use.[46] The ALJ also found that the consultative examining psychiatrists' and treating providers' opinions were based on Plaintiff's subjective reporting and consistent only with substance use.[47]

### 3.    Analysis

On this record, substantial evidence does not support the ALJ's finding that Plaintiff's substance use was a contributing factor material to disability. Without question, the record establishes that Plaintiff's drug use exacerbated his bipolar and schizoaffective symptoms, with evidence of drug use heavily outweighing periods of sobriety. But in finding that Plaintiff was not disabled when he was not using drugs, the ALJ erroneously relied on only a few normal findings, ignored

---

[45] AR 32 (citing AR 111–24).

[46] AR 32–33 (citing AR 84–96, 111–24).

[47] AR 33–34 (citing AR 1502–07, 1620–25, 1661–63, 1713–28).

DISPOSITIVE ORDER - 16

contradictory treatment records, and lacked a sufficient foundation to discount the mental health experts.

First, the ALJ only considered a few cherry-picked records from 2018 and 2019 as evidence of Plaintiff's functioning absent substance use.[48] The two therapy records from 2018 considered by the ALJ establish that Plaintiff's mental status was once mostly normal, and Plaintiff's mood, trauma, and flashbacks improved with medication.[49] The diversion program treatment records from 2018 and 2019 considered by the ALJ show that Plaintiff's mood, thought processes, and hallucinations improved with medication.[50]

---

[48] *See* AR 31–32 (citing AR 497, 502, 552, 561–66, 569–78, 589); *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

[49] AR 497, 502.

[50] AR 552, 562–66, 569–76, 578, 589.

DISPOSITIVE ORDER - 17

However, the overall diagnostic record from this period of sobriety demonstrates that Plaintiff's ability to work was still limited by severe mental impairments. In July 2018, when he had not recently used drugs, Plaintiff reported the following to a mental health therapist: he had "raging" emotions; he was very irritable; he relied on his prescribed Ativan to calm down; he had "past delusional thoughts and perhaps some recent and past auditory hallucinations"; "Christ ha[d] been talking to him . . . [Plaintiff could] hear him"; his mood was "down"; and at times he was restless and moved so fast that people could not understand what he was talking about.[51] On exam around this time, he had depressed mood, restricted and fatigued affect, slow and poorly organized speech, lethargic behavior and motor activity, and deficits in thought process and communication.[52] In September 2018, still having abstained from substances, he reported occasionally having paranoid thoughts that people were "following him [and] trying to come

---

[51] AR 502.

[52] AR 580.

DISPOSITIVE ORDER - 18

after him."[53] His bipolar disorder medication made him "fatigued . . . and sedated," rendering him unable to do daily activities or work, and "when he was not on medication he was hyper doing things which []he should not have done [and] felt manic and aggressive."[54] The ALJ did not consider any of the foregoing evidence.

Second, the ALJ did not consider the evidence of Plaintiff's mental health during his incarceration from 2019 to 2023. His initial mental health appraisal from the Department of Corrections described reports of manic episodes, delusions, and agitation connected to his bipolar 1 disorder diagnosis.[55] He continued experiencing depression and anxiety during incarceration, but his symptoms improved with medication and coping strategies.[56] He had a "resurgence of psychotic symptoms" and increased anxiety, so his provider suggested changes to

---

[53] AR 527.

[54] AR 527–28, 557.

[55] AR 700–01.

[56] AR 655, 658, 662, 684, 691, 693.

his medication.[57] At a later time, Plaintiff took a small amount of methamphetamine and "spice" without any symptoms besides dilated pupils.[58] Then in August 2022, he reported auditory hallucinations and/or "manic episodes in the absence of drug use."[59] Shortly before his release, Plaintiff reported having no mental health symptoms except for some anxiety and that he felt stable on his medication.[60] Collectively, the treatment records from prison show schizoaffective and bipolar impairments in the absence of drug use, improvement with medication that caused side effects, and waxing and waning symptoms, none of which the ALJ considered. Consistent with the foregoing evidence of significant symptoms absent drug use, Plaintiff reported the same symptoms to psychological examiners in January and September 2024 and at the ALJ hearing.[61]

---

[57] AR 658, 660.

[58] AR 645, 651.

[59] AR 627.

[60] AR 602.

[61] AR 57–58, 1502–06, 1620–24.

DISPOSITIVE ORDER - 20

Third, the ALJ lacked a sufficient foundation to discount several mental-health medical opinions as consistent only with substance use. Dr. B. reviewed the medical records at the initial level and opined that Plaintiff was markedly limited in his ability to interact with others, moderately limited in his ability to maintain pace, and moderately limited in adapting or managing oneself.[62] The ALJ found these opinions partially persuasive, explaining:

> Although [Dr. B.] explained his findings, the marked limitation he endorses is only consistent with the record medical evidence of substance use, while the moderate limitation he endorses in adapting or managing oneself is only consistent with the record medical evidence in the absence of substance use. Nowhere is this more apparent than in treatment notes showing an outpatient level of care was adequate without substance use, while inpatient care was required with substance use.[63]

The ALJ's reasoning is not supported by substantial evidence because, as explained above, the ALJ relied on a non-representative fraction of the medical evidence during periods of Plaintiff's sobriety. Further, the fact that Plaintiff received outpatient care during periods of sobriety

---

[62] AR 117.

[63] AR 32.

DISPOSITIVE ORDER - 21

does not negate the evidence of limitations that continued to impact his ability to work.

Similarly, the ALJ discounted Dr. G.'s prior administrative medical finding that Plaintiff's bipolar symptoms would cause other limitations partly because Dr. G. "did not adequately consider the effects of the claimant's substance use, as the evidence of record shows extreme symptoms and what amounts to an inability to live independently during periods of substance use."[64] But Dr. G. considered evidence throughout the record, including and not including substance use,[65] and the extremity of Plaintiff's symptoms when using drugs does not address how Plaintiff functioned when not using drugs.

Finally, the ALJ found the consultative psychiatric exam opinions of Drs. Stamschror and Wolcott consistent only with substance use partly because they relied heavily on Plaintiff's subjective reporting of his symptoms.[66] A medical opinion that is based primarily on a

[64] AR 32–33, 89–90, 94–95.

[65] *See* AR 89–90.

[66] AR 33–34.

DISPOSITIVE ORDER - 22

claimant's subjective reports may be considered unpersuasive as inadequately supported.[67] However, as explained, the ALJ improperly disregarded evidence showing that Plaintiff experienced these same symptoms during periods of sobriety. Consequently, discounting Drs. Stamschror and Wolcott's opinions as based on Plaintiff's reports relies only on a few cherry-picked findings that contradict the overall record.

Remand is required for the ALJ to reevaluate the evidence from when Plaintiff was not using drugs and reconsider the symptom reports and medical opinions in light of this evidence.[68] On remand, the ALJ shall order an updated consultative examination performed by a

---

[67] *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

[68] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018) ("When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits.").

DISPOSITIVE ORDER - 23

medical professional qualified in co-occurring mental disorders and drug addiction.[69] This examiner should be provided, at minimum, copies of Plaintiff's treatment records identified on pages 18–20 of this order—namely, the mental health care records from 2018[70] and the treatment records from his 2019–2023 incarceration[71]—and the prior consultative examination reports[72] to aid the examiner in opining whether any observed or reported limitations are the product of substance use or a co-occurring mental disorder.

**B.     Other Issues: The ALJ must reevaluate on remand.**

Plaintiff separately challenges the ALJ's rejection of the symptom testimony and weighing of the medical opinions. The ALJ's rejection of Plaintiff's mental-health symptom testimony and the mental-health medical opinions relied in large part on the ALJ's evaluation of the evidence absent substance use. As explained, that evaluation is not

---

[69] *See* SSR 13-2p, *supra* n.25.

[70] AR 489–508, 513–97 (Exhibits 1F, 3F).

[71] AR 598–702 (Exhibit 4F).

[72] AR 1502–06, 1620–24 (Exhibits 13F, 21F).

DISPOSITIVE ORDER - 24

supported by substantial evidence. The ALJ must reconsider this evidence on remand, which will in turn impact the ALJ's weighing of the symptom testimony and the medical opinions. Likewise, the Court need not address Plaintiff's challenges regarding the physical-health evidence, as remand for a new disability determination is required.

## IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

//

//

DISPOSITIVE ORDER - 25

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 6th day of July 2026.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge